# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5581 | **DATE** | 12/2/2004 |
| **CASE TITLE** | USA ex rel Tawoine Carter (#K-58491) vs. Terry Polk | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. TAWOINE CARTER (#K-58491), ) ) ) Petitioner, ) ) v. ) ) TERRY POLK,[1] Warden, Western Illinois Correction Center, ) ) ) Respondent. ) | Case No. 03 C 5581 |

DOCKETED
DEC - 3 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Before the Court is petitioner Tawoine Carter's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(d)(1). For the reasons discussed below, the Court denies Carter's petition.

I.  BACKGROUND

   A.  Trial Evidence

Carter does not challenge the statement of facts set forth in the Illinois Appellate Court opinion affirming the judgment of the trial court, and thus those facts are presumed correct for purposes of the Court's review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Hinsley*, 377 F.3d 719, 721 (7th Cir. 2004). The Court, therefore, adopts the underlying facts set forth by the Appellate Court of Illinois, First Judicial District. *See People v. Carter*, No. 1-01-2945 (1st Dist. Mar. 14, 2003)

---

[1] Terry Polk is currently the Warden at the Western Illinois Correction Center and is thus the proper Respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, the Court substitutes Polk as the Respondent. *See* Fed. R. Civ. P. 25(d)(1).

(unpublished order).

The evidence presented at trial establishes that on March 19, 1998, Heriberto Tafolla ("Tafolla") went to a currency exchange to pay his bills. Carter and his brother were inside the currency exchange. After paying his bills, Tafolla walked through an alley to go home. Tafolla noticed that Carter and his brother had followed him down the alley. Shortly thereafter, Carter pulled a small, black .25 caliber semi-automatic gun out of his waist and ordered Tafolla to stop. Carter then told Tafolla to give up all his money. Tafolla complied and gave all of his cash to Carter.

Tafolla testified that during the robbery a brown Chevrolet Caprice drove by. The driver of the Caprice was later identified as Ventura Alvarez ("Alvarez"). Tafolla knows Alvarez because they used to live on the same street. Tafolla further testified that Alvarez stopped and backed up his car after he drove by the scene of the robbery. Seeing the Caprice back up, Carter and his brother started running. Alvarez got out of his car with a bat in his hand. Tafolla then saw Carter fire a shot at Alvarez. Carter began running and Alvarez got back into the Caprice and followed Carter and his brother.

Tafolla did not report the robbery to the police because he was scared. Later that day, however, police officers came to Tafolla's house to question him about the robbery. Tafolla then went to the police station to view a line up. Tafolla identified Carter and his brother as the people who had robbed him.

Officer Magarito Ramirez ("Officer Ramirez"), an off-duty police officer for the Chicago Police Department, testified that he saw an empty Caprice stopped in the middle of the street blocking two lanes of traffic. Officer Ramirez, who was accompanied Danny Castillo, an off-

duty Chicago Housing Authority police officer, further testified that he saw Alvarez running into the nearby Church's Chicken parking lot with a bat in his hand. Officer Ramirez recognized Alvarez because they grew up in the same neighborhood. Officer Ramirez testified that he saw Carter's brother standing in the middle of the parking lot and Carter standing between two cars. Officer Ramirez also testified that he saw Carter slip and fall down and Alvarez come within five to ten feet of Carter. Carter recovered, got up, raised a small, black, semi-automatic gun, and fired a shot at Alvarez. Alvarez turned and fled. Carter and his brother then walked across the parking lot.

Thereafter, Carter and his brother walked down the street. Officers Ramirez and Castillo followed them. Officer Ramirez then drove down to the next street corner, parked his car, and waited for Carter and his brother. As Carter and his brother approached, Officers Ramirez and Castillo showed them their badges and ordered them to stop. Instead of stopping, Carter and his brother fled and the officers followed. Carter ran across a playground, stumbled, got up, and then pointed his gun at Officer Ramirez. As Officer Ramirez drew his weapon, Carter resumed running in the same direction as his brother. While running, Carter passed the gun to his brother. After a long chase, Officers Ramirez and Castillo arrested Carter.

Another Chicago Police Officer testified to finding the gun near the scene of Carter's arrest. The recovered gun was a .25 caliber semi-automatic handgun that had a bullet in the chamber and four bullets in the magazine. Officer Ramirez made a positive identification of the gun used in the shootings, as well.

B.  **Procedural Background**

Following a jury trial in the Circuit Court of Cook County, the jury found Carter and his

brother guilty of aggravated discharge of a firearm in violation of 720 ILCS 5/24-1.2-A(2). The trial court sentenced Carter to 12 years imprisonment to be served consecutively to another sentence he received from a prior, unrelated conviction.

Carter appealed his aggravated discharge of a firearm conviction to the First District Appellate Court of Illinois. On appeal, Carter raised the following issues: 1) the trial court erred in not instructing the jury on the issue of self-defense; (2) he was denied a fair trial where the State charged him with a single instance of aggravated discharge, yet the State introduced evidence that he fired two shots at two different locations; and (3) his sentence was unconstitutional based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (R.8-1, Rules Governing Habeas Corpus Cases, Rule 5, Exhibits, Ex. A). On March 14, 2003, the First District, Illinois Appellate Court affirmed Carter's conviction and sentence. (Ex. A)

Next, Carter filed a petition for leave to appeal to the Illinois Supreme Court. In his petition, he raised the first and second issues that he presented in his criminal appeal to the appellate court. (Ex. E) Carter, however, did not bring an *Apprendi* claim in his petition for leave to appeal to the Illinois Supreme Court. (Ex. E) On June 4, 2003, the Illinois Supreme Court denied his petition for leave to appeal. (Ex. D)

On August 11, 2003, Carter filed the present habeas corpus petition with the Court. Respondent filed its answer on October 16, 2003. Carter filed his reply on January 20, 2004. Construing his *pro se* habeas petition liberally, *see Calhoun v. DeTella,* 319 F.3d 936, 943 (7th Cir. 2003), Carter asserts the following claims: 1) the trial court erred by failing to give a self-defense jury instruction; (2) his "double jeopardy rights were violated"; and (3) his sentence was

4

unconstitutional under *Apprendi*.

## II.  LEGAL STANDARDS

### A.  Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of law clearly established by the Supreme Court. *See Rodriguez v. Chandler*, 382 F.3d 670, 672 (7th Cir. 2004); *see also Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

Under the "unreasonable application" prong under Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams*, 529 U.S. at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003) (unreasonable application more than an incorrect or erroneous decision). To be considered "unreasonable" under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

5

**B.    Procedural Default**

A petitioner's failure to present a constitutional claim to the highest state court to which he may appeal it in the manner required by state law results in a procedural default preventing a federal court from deciding the claim on collateral review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or by showing that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

**III.    ANALYSIS**

**A.    Court's Jurisdiction and Exhaustion of State Court Remedies**

As an initial matter, the Court must determine whether it has jurisdiction over Carter's habeas petition. Jurisdiction over Carter's habeas petition is proper only if it is not a "second or successive petition," 28 U.S.C. § 2244(b), and is timely, 28 U.S.C. § 2244(d)(1). Because this is Carter's first habeas petition, the AEDPA's proscriptions against second or successive petitions do not affect him. With respect to the timeliness of Carter's petition, the Illinois Supreme Court denied his petition for leave to appeal on June 4, 2003. Carter did not filed a petition under the Illinois Post-Conviction Hearing Act. Carter filed his habeas petition on August 11, 2003. The AEDPA's one year statute of limitations is not at issue. *See* U.S.C. § 2244(d)(1); *Moore v. Knight*, 368 F.3d 936, 938 (7th Cir. 2004). The Court, therefore, has jurisdiction to consider Carter's habeas petition.

Next, the Court must determine whether Carter has exhausted his state court remedies.

State court remedies are exhausted when they are presented to the highest court for a ruling on the merits or when no means of pursuing review remain available. *See* 28 U.S.C. § 2254(c); *Perruquet v. Briley*, ___ F.3d ___, 2004 WL 2600589, at *6 (7th Cir. Nov. 17, 2004). Under the Illinois Post-Conviction Hearing Act, Carter was required to file his post-conviction petition with the Circuit Court of Cook County within six months after the Illinois Supreme Court's denial of his petition for leave to appeal. *See* 725 ILCS 5/122-1(c) (West 2002). Here, the Illinois Supreme Court denied Carter's petition for leave to appeal on June 4, 2003. Carter had until January 4, 2004, to file his post-conviction petition, but he failed to do so. Because Carter's claims can no longer be presented to the Illinois courts in a petition for post-conviction relief, Carter has exhausted his state court remedies.

### B. Self-Defense Jury Instruction

In Carter's first habeas claim, he alleges that the trial court erred when it failed to instruct the jury on the theory of self-defense. Claims based on allegations that a state court erred in applying Illinois law, however, are not cognizable on habeas review. *See Gilmore v. Taylor*, 508 U.S. 333, 342, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). In fact, the United States Supreme Court has directly addressed the issue of state court jury instructions in *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The *McGuire* Court concluded that because a state court's interpretation of jury instructions turns on state law, such matters are beyond the scope of federal habeas review unless the instructions infect the entire trial such that due process has been denied. *See id.; see also Perruquet*, 2004 WL 2600589, at *4. Carter has not alleged any such constitutional violation, and thus the Court cannot review Carter's first habeas claim because it is not cognizable on collateral review.

7

## C. Double Jeopardy Claim

Next, Carter argues that his "double jeopardy rights were violated" based an argument in his criminal appeal that he was deprived of a fair trial because the bill of particulars only stated that Carter fired one shot at Alvarez, but the State introduced evidence that Carter had filed two shots at Alvarez. Under both the federal and Illinois constitutions, a criminal defendant has the fundamental right to be informed of the "nature and cause" of the criminal accusations made against him. *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Cuadrado,* 341 Ill. App. 3d 703, 709, 275 Ill. Dec. 659, 793 N.E.2d 139 (Ill.App.Ct. 2003).

On Carter's direct appeal, the Illinois Appellate Court explained that the purpose of the bill of particulars is to give a criminal defendant notice of the charge against him and to inform him of the particular transactions in question to enable the defendant to determine his defenses. *See People v. Carter,* No. 1-01-2945. at *8 (1st Dist. March 14, 2003). The court noted, however, that the indictment, not the bill of particulars, is the charge upon which the defendant is tried. *Id.* Further, the Illinois court explained that to vitiate a trial, the variance between the allegations in the criminal complaint and the proof at trial must be material and of such character as to mislead the defendant in making his defenses or expose the defendant to double jeopardy. *Id.* at *8-9.

The Illinois Appellate Court then reviewed the indictment and the testimony presented at trial. The court concluded that the evidence at trial was entirely consistent with the allegations in the information. *Id.* at *10. Specifically, the court stated: "The only variance was that the evidence at trial was more specific than the information. Indeed, on appeal, in his brief and

during oral argument, defendant failed to say how he was prejudiced in preparing his defense. Thus the defendant's argument has no merit, and a reversal of his conviction is unwarranted." *Id.* at *10-11.

The Court concludes that the Illinois Appellate Court's decision does not lie "well outside the boundaries of permissible differences of opinion." *See Hardaway*, 302 F.3d at 762. Accordingly, the Illinois court's decision was not an unreasonable application of clearly established Supreme Court law.[2] Here, the Illinois Appellate Court reviewed the indictment and the testimony presented at trial and concluded that the only variance was that the trial testimony was more specific than the indictment, not that Carter was misled or exposed to double jeopardy. Furthermore, the Illinois court concluded that Carter failed to establish that he was prejudiced in preparing his defense because the indictment failed to detail both shooting incidents.

Finally, Carter never addresses the Illinois Appellate Court's decision in the first instance, and thus fails in his burden of establishing that the Illinois Appellate Court rejected his claim in a way that was either "contrary to" or an "unreasonable application of" clearly established Supreme Court law. *See Lechner v. Frank*, 341 F.3d 635, 638 (7th Cir. 2003); *see also Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2003) (per curiam) (petitioner has burden of establishing state court applied facts in an objectively unreasonable manner). Accordingly, Carter's second habeas claim must fail.

---

[2] Although the Illinois Appellate Court only relied on Illinois case law, under the AEDPA, state courts are not required to cite United States Supreme Court cases or even be aware of such law, as long as neither the reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002).

9

### D. Apprendi Claim

Last, Carter argues that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L Ed. 2d 435 (2000). Carter, however, failed to present this claim to the Illinois Supreme Court in his petition for leave to appeal, and thus has procedurally defaulted his *Apprendi* claim. *See Boerckel*, 526 U.S. at 845. Carter has not overcome this default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law. *See Coleman,* 501 U.S. at 750. Further, Carter does not contend that failure to consider this claim will result in a fundamental miscarriage of justice. *See id.* Accordingly, the Court is procedurally barred from considering Carter's *Apprendi* claim.

### CONCLUSION

For these reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

Dated: December 2, 2004.                **ENTERED**

**AMY J. ST. EVE**
**United States District Judge**